UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                    Case No. 09-CR-0025

FRANCIS H. NAHWAHQUAW,

        Defendant.

**ORDER DENYING MOTION TO SUPPRESS STATEMENT**

On January 21, 2009, a federal grand jury sitting in the Eastern District of Wisconsin returned a one-count indictment against Francis H. Nahwahquaw, a Native American Indian, charging him with the January 10, 2009 sexual abuse of S.A.A. on the Menominee Indian Reservation in violation of 18 U.S.C. §§ 1153 and 2242(1). Nahwahquaw was arraigned on January 23, 2009 and entered a plea of not guilty. He then filed a motion to suppress the statement he made to law enforcement on January 10, 2009, in which he admitted that the victim's account of the assault was accurate. Nahwahquaw claims that his statement should be suppressed because FBI Special Agent ("S.A.") Roberto Molina, who interviewed him, did not honor his request to remain silent. Nahwahquaw also claims his statement was involuntary and the product of coercion. Following an evidentiary hearing, the parties have submitted briefs. Having considered the evidence presented and the arguments of counsel, I now conclude that the motion should be denied.

Nahwahquaw first argues that his statement should be suppressed because S.A. Molina violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Miranda*, of course, requires

that a custodial interrogation of a suspect be preceded by the familiar warnings concerning the right to remain silent, the fact that any statements he does make can be used against him in court, and the right to representation by an attorney while being questioned, whether he can afford it or not. *Id.* at 444-45. Unless a suspect is expressly advised of these rights and knowingly and voluntarily waives them, any resulting statement is inadmissible at trial. *Id.* Moreover, the fact that a defendant initially waives his rights and agrees to talk to police does not mean that he cannot change his mind. Once a suspect has asserted his right to silence, the police must "scrupulously honor" his request and cease questioning him. *Michigan v. Mosley*, 423 U.S. 96, 103-04 (1975).

In this case, Nahwahquaw does not dispute the fact that he was fully advised of his Miranda warnings by S.A. Molina before the interview commenced. He also agrees that he voluntarily waived his rights. Nahwahquaw contends, however, that after he gave his side of the story in which he admitted he had sexual intercourse with S.A.A. but claimed it was consensual, S.A. Molina challenged his version of events and accused him of lying. S.A. Molina suggested that a witness had heard S.A.A. crying when she left Nahwahquaw's van where the assault allegedly occurred. At that point, Nahwahquaw contends that he told S.A. Molina that he no longer wished to speak with law enforcement about the incident. S.A. Molina, on the other hand, denied that the defendant ever asserted his right to remain silent, but instead admitted he had "f- - ked up" and had done what S.A.A. said he had done.

Having considered the testimony of S.A. Molina and Nahwahquaw, as well as the circumstances surrounding the events, I find that S.A. Molina's testimony is more credible. First, I note that S.A. Molina had no motive or reason to lie. In fact, as a special agent with the FBI, S.A. Molina's career would be in jeopardy were he to lie under oath about such a matter. Moreover, it

2

is clear from his testimony that S.A. Molina did not attempt to conceal or minimize his use of an interrogation "tactic". He candidly admitted that he had planned to develop a "chink" in Nahwahquaw's armor before he began the interview, anticipating that Nahwahquaw would admit having had sex with S.A.A. but claim it was consensual. The tactic consisted of the suggestion that a witness had heard S.A.A. crying as she left his vehicle and challenging his manhood in order to induce him to admit what he had done. This is not the kind of testimony I would expect from a dishonest law enforcement officer who seeks to place himself above all possible reproach.

Nahwahquaw, by contrast, had a strong motivation to lie about the circumstances under which he made his confession. The charge against him is very serious and could result in the loss of liberty for a substantial period of time. Obviously, this can be said of any defendant and therefore does not, by itself, provide a basis for discounting his testimony. But, certainly, the fact that Nahwahquaw would have far greater motivation for lying about what occurred than S.A. Molina should not be ignored. It is also significant that Nahwahquaw does not deny the balance of S.A. Molina's testimony. He does not deny that he admitted to Agent Molina, after his first version was challenged, that he did in fact sexually assault S.A.A. It is only with respect to the defendant's claim that he invoked his right to remain silent that the testimony is in dispute. Moreover, Nahwahquaw offers no explanation for why he continued answering S.A. Molina's questions if he no longer wished to do so. There is no claim that he was threatened or abused in any manner. Nahwahquaw doesn't claim that S.A. Molina badgered him into continuing the interview. In essence, he claims that despite his statement to S.A. Molina that he no longer wished to speak with him, the interview continued without interruption. I do not find Nahwahquaw's testimony on this issue credible.

Nahwahquaw no doubt now wishes he had invoked his right to remain silent. He may even have thought of doing so, and perhaps now thinks he actually did at the time. But a suspect's invocation of a right to remain silent in the course of a custodial interview is an important event for a law enforcement officer to observe and record. Based on their training, law enforcement officers understand the significance of such an event and make note of it. For me to find that Nahwahquaw had invoked his right to remain silent in any audible way would require me to find that Agent Molina intentionally lied. I see no basis for reaching such a conclusion based on the evidence before me. Accordingly, I find from the testimony that Nahwahquaw never asserted his right to remain silent and, thus, no *Miranda* violation has been shown. Based on the evidence before me, I find that S.A. Molina fully complied with *Miranda*.

The defendant also contends that his statement should be suppressed because it was coerced and therefore involuntary. The Due Process Clause prohibits the use at trial of a defendant's statement if it is not voluntary. *Colorado v. Connelly*, 479 U.S. 157, 163 (1986). "A confession is voluntary if, in the totality of circumstances, it is the 'product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.' " *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir.2001) (quoting *United States v. Dillon*, 150 F.3d 754, 757 (7th Cir.1998)). For a statement to be considered involuntary, the court must find that the police engaged in coercive activity. *Connelly*, 479 U.S. at 167. In deciding whether police conduct was coercive the court must consider factors such as "the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention, the nature of the interrogations; the inclusion of advice about constitutional

4

rights; and the use of physical punishment, including deprivation of food or sleep." *Huerta*, 239 F.3d at 871.

On the question of whether Nahwahquaw's confession was voluntary, the facts are not significantly in dispute. S.A. Molina delayed his interview of Nahwahquaw because he was intoxicated when he was first arrested in the early morning hours of January 10, 2009. After waiting for the effects of his intoxication to wear off and his mind to clear, S.A. Molina, accompanied by Detective Richard Nacotee of the Menominee Tribal Police, spoke with Nahwahquaw in an interview room at the Tribal Police Department. S.A. Molina had Nahwahquaw read his *Miranda* rights out loud off a printed form and asked him if he understood them and would be willing to talk with him about the complaint S.A.A. had made against him. Nahwahquaw indicated he understood his rights, signed the form acknowledging as much, and agreed to answer questions about the incident. He then recounted the events of the previous evening and early morning hours when he was with S.A.A., culminating in his version of the sexual encounter. When asked if he would be willing to take a polygraph concerning the incident, Nahwahquaw declined. S.A. Molina then falsely indicated to Nahwahquaw that a witness had heard S.A.A. crying as she left his van. S.A. Molina told Nahwahquaw that he thought he was lying and urged him to own up to what he had done and "be a man". Nahwahquaw then responded that he had "f - - ked up" and stated he was "just trying to get a piece of ass" before he went home. He said he felt bad about what he had done and apologized for lying about it. S.A. Molina testified that his tone throughout the interview was civil, he made no threats or promises, and there was no table-pounding or yelling. The only conflict in Nahwahquaw's testimony was his claim that after S.A. Molina accused him of lying, he said

5

"that's all, I don't want to say anything else." For the reasons set forth above, I find Nahwahquaw's testimony in this respect not credible.

Based upon the totality of circumstances, I now also find that Nahwahquaw's statement was voluntary. Although the record is silent as to Nahwahquaw's age and education, he appeared well into his thirties and exhibited no intellectual deficiencies. At the time of his arrest shortly after 6:00 a.m., a Breathalyzer revealed a .16 alcohol content. It was for this reason that S.A. Molina postponed his interview until 1:30 p.m. so that Nahwahquaw could recover. At the time he commenced the interview, S.A. Molina observed no evidence of intoxication. Nahwahquaw did not stagger or slur his words. The record is also silent as to the length of the interview, but from the description of what occurred, it seems to have lasted no more than an hour-and-a-half. Nahwahquaw was not subjected to physical punishment or abuse; nor was he deprived of food or sleep. Indeed, S.A. Molina waited for him to get more sleep before he commenced the interview.

Nahwahquaw points to the fact that S.A. Molina falsely stated that there was a witness who heard S.A.A. crying as she left his van as evidence of coercion, but this is far short of what is required to render a statement involuntary. This type of trickery, by itself, does not make a confession involuntary. *See* Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 6.2(c), at 456-58 (2nd ed. 1984). In *Frazier v. Cupp*, 394 U.S. 731 (1969), for example, the police falsely told the defendant that his cousin, with whom he had been on the evening in question, had been brought in and confessed. In rejecting the defendant's claim that his resulting confession was involuntary, the Court noted that the questioning was of short duration, and petitioner was a mature individual of normal intelligence. *Id.* at 740. While relevant, the Court

6

concluded that the fact that the police misrepresented the statements that the defendant's cousin had made was "insufficient in our view to make this otherwise voluntary confession inadmissible." *Id.*

Likewise, in *Holland v. McGinnis*, 963 F.2d 1044 (7th Cir. 1992), a suspect in a rape case confessed after a law enforcement officer falsely told him that a witness had seen his vehicle in the alley where the victim had been raped. The Seventh Circuit acknowledged that such misrepresentations may cause a suspect to confess, but noted that "causation alone does not constitute coercion; if it did, all confessions following interrogations would be involuntary because "it can almost always be said that the interrogation caused the confession." *Id.* at 1051 (quoting *Miller v. Fenton*, 796 F.2d 598, 605 (3d Cir.), *cert. denied*, 479 U.S. 989 (1986)). The issue, the Court said, "is not causation, but the degree of improper coercion . . . ." *Id.* Inflating evidence of the defendant's guilt interfered "little, if at all, with his "free and deliberate choice" of whether to confess . . . ., the Court held, "for it did not lead him to consider anything beyond his own beliefs regarding his actual guilt or innocence, his moral sense of right and wrong, and his judgment regarding the likelihood that the police had garnered enough valid evidence linking him to the crime." *Id.* In other words, the Court explained, "the deception did not interject the type of extrinsic considerations that would overcome Holland's will by distorting an otherwise rational choice of whether to confess or remain silent." *Id.* By way of contrast, the *Holland* Court noted that in *Lynumn v. Illinois*, 372 U.S. 528 (1963), the police falsely told a female suspect that she was in jeopardy of losing welfare benefits and custody of her children, but offered to recommend leniency if she would confess. The Supreme Court found the police misrepresentation in *Lynumn* "inherently coercive" because it "did more than affect the suspect's beliefs regarding her actual guilt or innocence, and judgments regarding the evidence connecting her to the crime." *Holland*, 963 F.2d

7

at 1051-52. It "distorted the suspect's rational choice . . . by introducing a completely extrinsic consideration: an empty but plausible threat to take away something to which she and her children would otherwise be entitled." *Id.*

The type of misrepresentation employed by S.A. Molina here was clearly not "inherently coercive". Indeed, it is not altogether clear S.A. Molina's statement was even materially false. According to the complaint, S.A.A. was crying when she exited the van and entered her house, and her aunt saw her and apparently asked what was wrong. S.A.A. told her aunt what had happened, which prompted the call to the police. (Doc. # 1, Compl. ¶ 8.) If this actually happened, then S.A. Molina's statement does not seem materially false. But even if it was false, it is not the kind of misrepresentation that would interfere with Nahwahquaw's free and deliberate choice concerning whether he should confess. It did not introduce a completely extrinsic consideration and thereby distort his rational choice of whether or not to confess. The belief that the evidence against him is stronger than it really is may cause a guilty person to believe he has little to lose by telling the truth, but by itself it does not coerce or overcome a person's will.

I conclude based on the totality of circumstances that Nahwahquaw's confession was voluntary. His motion to suppress his statement is therefore denied.

**SO ORDERED** this   19th   day of March, 2009.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge